**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | | |
|---|---|---|
| **DEAN A. SMITH,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MARTIN O'MALLEY,**<br>*Commissioner of the Social Security Administration,*<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **NO. 5:23-CV-00063-MAS** |

**MEMORANDUM OPINION & ORDER**

Plaintiff Dean A. Smith ("Smith") appeals the Commissioner's denial of disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA").[1] Before the Court are the parties' cross-motions for summary judgment. [DE 8, 10]. For the reasons discussed below, the Court finds that Administrative Law Judge ("ALJ") Kendra Kleber applied the proper legal framework and supported her non-disability finding with substantial evidence in the record. The Court grants the Commissioner's motion and denies Smith's competing motion.

[1] The legal standard DIB claims mirrors that of Supplemental Security Income ("SSI"). *See Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at *3 (6th Cir. 1991) (table). "The standard for disability under both the DIB and SSI programs is virtually identical." *Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at *3 (E.D. Mich. Jan. 14, 2013), *report and recommendation adopted*, 2013 WL 450934 (E.D. Mich. Feb. 6, 2013); *see also Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at *4 (E.D. Ky. Feb. 3, 2010). The Court generally references SSI and DIB case law interchangeably, mindful of the particular regulations pertinent to each type of claim.

## I. LEGAL FRAMEWORK

Judicial review of the ALJ's decision is deferential and strictly limited. The Court's sole task is to determine whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). Substantial evidence is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "The substantial-evidence standard allows considerable latitude to administrative decision makers" and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The Court must make its substantial evidence determination based on the record. *Cutlip*, 25 F.3d at 286. However, the Court need not comb the entire (lengthy) record in search for facts supporting under-developed arguments. [*See* DE 16 (General Order No. 13-7) (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find

support for the parties' arguments.")]. Further, the Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court must affirm the ALJ's decision if there is substantial evidence in the record to support it, even if substantial evidence might also support the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 393 (6th Cir. 2004); *Mullen*, 800 F.2d at 545. Likewise, the Court must affirm any ALJ decision supported by substantial evidence, even if the Court itself might have reached a different original result. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

For context, the Court briefly outlines the proper five-step sequential analysis as conducted by an ALJ in determining disability status. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. §§ 416.920(a), 404.1520(a). In the first step, the ALJ decides whether the claimant is performing substantial gainful activity. 20 C.F.R. §§ 416.920(a)(4)(i), 404.1520(a)(4)(i). In the second step, the ALJ determines whether the claimant suffers from any severe impairments. *Id.* at §§ 416.920(a)(4)(ii), 404.1520(a)(4)(ii). In the third step, the ALJ decides whether such impairments, either individually or collectively, meet an entry in the Listing of Impairments. *Id.* at §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii). In the fourth step, the ALJ determines the claimant's residual functional capacity ("RFC") and assesses whether the claimant can perform past relevant work. *Id.* at §§ 416.920(a)(4)(iv), 404.1520(a)(4)(iv). Finally, in the fifth step, the burden shifts to

the Commissioner. The ALJ must consider and decide whether there are jobs that exist in significant numbers in the national economy that the claimant could perform based on RFC, age, education, and work experience. *Id.* at §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). If the ALJ determines at any step that the claimant is not disabled, the analysis ends there.

Because Smith's claim was filed after March 27, 2017, the ALJ must consider and articulate medical opinions and prior administrative medical findings as outlined in 20 C.F.R. § 404.1520c, as set forth in pertinent parts below:

> (a) How we consider medical opinions and prior administrative medical findings. We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. [. . .] We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.
>
> (b) How we articulate our consideration of medical opinions and prior administrative medical findings. We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record. Our articulation requirements are as follows:
>
> (1) Source-level articulation. [. . .] [W]e will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.
>
> (2) Most important factors. The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider . . . . [W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings . . . .

> We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section[.]

[. . .]

> (c) Factors. We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case:
>
> (1) Supportability. [. . . ]
>
> (2) Consistency. [. . . ]
>
> (3) Relationship with the claimant. [. . . ]
>
> (i) Length of the treatment relationship. [. . . ]
>
> (ii) Frequency of examinations. [. . . ]
>
> (iii) Purpose of the treatment relationship. [. . . ]
>
> (iv) Extent of the treatment relationship. [. . . ]
>
> (v) Examining relationship. [. . . ]
>
> (4) Specialization.
>
> (5) Other factors. We will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding. This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements. When we consider a medical source's familiarity with the other evidence in a claim, ***we will also consider whether new evidence we receive after the medical source made her or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.***
>
> (d) Evidence from nonmedical sources. We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)–(c) in this section.

20 C.F.R. § 404.1520c (emphasis added).

> In assessing a claimant's RFC, the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make findings. 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling 16-3p ("SSR 16-3p"). A claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 16-3p.

*Sikes v. Kijakazi*, 2021 WL 3553490, at *9 (W.D. Ky. Aug. 11, 2021).

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. PROCEDURAL HISTORY

Smith protectively filed an application for Title II DIB benefits on October 12, 2021, alleging disability beginning June 22, 2021. [Administrative Transcript ("Tr.") at 137]. Smith's insured status under Title II of the Act expired on December 31, 2021, thus, the relevant time period is from June 22, 2021, through December 31, 2021. The Commissioner stressed that Smith "must prove disability between his alleged onset date and December 31, 2021, or he cannot prevail. Evidence obtained after the date last insured is of little value unless it relates to the claimant's condition before the expiration of insured status." [Commissioner's Brief, DE 10 at Page ID# 769] (citing *Grisier v. Comm'r of Soc. Sec.*, 721 F. App'x 473, 477 (6th Cir. 2018)).

Smith alleged disability due to post-traumatic stress disorder ("PTSD"), major depressive disorder, anxiety, plantar fasciitis, and tinnitus. [Tr. at 137]. Smith was 44 years old at the alleged onset date. [Tr. at 137]. He has a college degree and previously worked as an auditor and as an infantry soldier. [Tr. at 261]. A very brief overview of his medical treatment relevant to his disability claim is provided below and can be found in the record at DE 5.

Smith's claims were denied initially on February 1, 2022, and on reconsideration on April 8, 2022. [Tr. at 136 and 144]. On October 24, 2022, following a hearing, the ALJ found that Smith was not disabled as defined in the Social Security Act ("the Act"). [Tr. at 24-43]. On January 20, 2023, the Appeals Council denied review. [Tr. at 8]. On March 3, 2023, the Appeals Council set aside the January 20, 2023, denial, considered additional information, and denied review again, making the ALJ's decision the final agency decision. [Tr. at 1-3]. This appeal followed.

**B. MEDICAL HISTORY**

Smith was receiving mental health counseling services through the Veterans Administration (VA) since at least 2017. [Tr. at 531]. He was given a 100 percent service-connected disability rating as of February 2018, attributed to post-traumatic stress disorder with unspecified depressive disorder. [Tr. at 325–31]. Smith's records reflect he attended individual and group therapy at various intervals throughout 2020, 2021, and 2022. [Tr. at 474–80, 541–86, and 628–82]. The therapy sessions related to PTSD symptoms, mood disturbances, and anxiety.

**C. MEDICAL OPINIONS[2]**

P. Leanne Scott, M.S., L.P.P. ("Scott") conducted a consultative psychological examination and issued an opinion. [Tr. at 497-501]. Scott diagnoses PTSD, depressive disorder, and alcohol use disorder in reported remission. [Tr. at 501]. Scott opined that Smith's capacity to understand, retain, and follow instructions

[2] The file includes other medical opinions; however, the opinion of Ms. Scott is the only one Smith directly challenges.

towards the performance of simple, repetitive tasks appeared not to be affected by his mental health symptoms; that his ability to sustain attention and concentration towards the completion of tasks under time constraints appears affected to a moderate degree, his ability to tolerate stress and the pressure of employment appears to affected to a marked degree; and his capacity to respond appropriately to supervisor, co-workers, and the general public in a work setting appears to be affected to a moderate to marked degree. [Tr. at 501].

**D. ALJ'S DECISION**

The ALJ noted in her decision that Smith had filed two prior claims for Title II benefits, both of which had been denied. The most recent of those applications (prior to the instant one) was filed in August of 2020. [Tr. at 27]. As a part of that application process, Smith had a hearing with ALJ Robert Bowling, who rendered an unfavorable decision on June 24, 2021. The Appeals Council denied review of that claim on August 25, 2021. [Tr. at 28]. At noted, the current application was filed on October 12, 2021, alleging disability from June 22, 2021. The ALJ found that under *Drummond v. Comm'r*, 126 F.2d 598 (6th Cir. 1997), she was "bound by" the findings of Judge Bowling's prior decision. [Tr. at 28]. She noted that "[p]reviously determined issues cannot be reexamined absent new and additional evidence or changed circumstances." [Tr. at 28].

The ALJ found that through the date last insured the severe impairments were the same as Judge Bowling found in 2021. Those were depression, bipolar and related disorders, anxiety, obsessive-compulsive disorder, substance abuse addiction disorder, PTSD, and personality disorder. She further found that Smith did not have

an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1.

At the fourth step, ALJ Kleber adopted Judge Bowling's assessment of Smith's RFC, though she restated it somewhat.[3] The ALJ found that

> Mr. Smith had the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: Specifically he is able to perform work that involves no more than moderate background noise equivalent to an office. He is able to understand, remember and perform simple tasks, defined as those which can be learned after a short demonstration or within 30 days. He is able to maintain attention and concentration for simple tasks over two hour periods between regular breaks. The work he can perform involves an object focused environment. He is able to tolerate occasional and superficial interaction with coworkers and supervisors in a nonpublic setting; superficial is defined as interaction for the purpose of greeting, serving, or receiving instructions. He is able to adapt to gradual changes in the [ ] routine work environment. Additionally, I find that the work he can perform is low stress, defined as work that does not involve an inflexible or fast-paced including the speed controlled assembly-line and also the work does not involve team oriented tasks were someone relies on the worker or he relies on someone else.

[TR. at 32].

The ALJ found that Smith could not perform any past relevant work. [Tr. at 36]. Based on vocational expert testimony [Tr. at 37–38] the ALJ found that Smith could perform three representative occupations of unskilled work (electrical assembler, sorter, and bench assembler) existing in significant numbers in the

[3] To the extent there are any arguably substantive variations between ALJ Bowling and ALJ Kleber's RFC findings, Smith did not present that contention in his appeal.

national economy. [Tr. at 38]. Thus, the ALJ found that Smith was not disabled under the Social Security Act. [Tr. at 38].

## II. ANALYSIS

Smith makes two arguments: first, that the ALJ's non-disability determination is not supported by substantial evidence "and is the product of legal error where the ALJ failed to properly evaluate the opinion evidence" as related to the opinion of Scott; and second, that the ALJ erred in applying the *Drummond* decision and Acquiescence Ruling 98-3, leading to inappropriate reliance on a non-examining source's opinion. [DE 8-1 at Page ID # 743]. The Court disagrees.

### A. THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY DETERMINATION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE.

Smith first contention is that the ALJ erred because her RFC determination was not supported by substantial evidence and was therefore the product of legal error. Smith claims the ALJ failed to evaluate properly the opinion of consultative examiner Scott, and improperly relied on the unsupported opinions of the non-examining state agency psychological consultants. Specifically, Smith claims the ALJ failed to the supportability and consistency factors—the two most important factors in the determination—as required by the regulations. 20 C.F.R. § 404.1520c "The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be.").

As to the supportability factor, the Court disagrees with Smith's position. Smith argues the ALJ failed to provide "build an accurate and logical bridge between the evidence and the result," here, that she found Smith's opinion generally not persuasive. [DE 8-1 at Page ID# 753]. The ALJ explained her reasons for doing so, saying

> Ms. Scott's opinion is not generally supported by her own objective findings, as she reported that Mr. Smith could spell a word back ward, recite five digits forward, recited four digits backward, complete serial 7 testing, perform basic calculations, recall three out of three words after a delay, and recall recent and remote personal events (Ex. C3F/3). Further, the other evidence of record is not consistent with her assessment. For example, Mr. Smith's treating providers generally noted that he showed normal grooming, a fair to good attitude, appropriate behavior, normal speech, linear thought content, and generally fair insight (Ex. C6F/96, 116, 133).

[Tr. at 35]. As Smith notes, in addition to the reported findings quoted above, Scott also noted Smith had limited coping skills and was socially isolative, facts that the ALJ also cited in her decision. [Tr. at 34]. However, simply because there were some findings in Scott's report that supports Smith's position does not mean the ALJ's determination does not meet the supportability factor. In *Hardy v. Comm'r of Soc. Sec.*, the Court remanded the case for further proceedings where the ALJ found two doctor's opinions unpersuasive and stated so in single sentences addressing each source. "[S]he did not refer to any of these medical findings in the record. She did not explain why she chose to accept the findings that undercut the opinions and to reject the findings that supported them. . . . There was no discussion — no 'articulation' — of the supportability and consistency factors." *Hardy v. Comm'r of Soc. Sec.*, 554 F.Supp.3d 900, 907 (E.D. Mich., 2021). Hardy provides a striking contrast to the ALJ

decision as issue here. ALJ Kleber discussed and articulated the specific reasons, including Scott's documentation of Smith's ability to perform particular mental tasks and his interactions with other treatment providers, for finding Scott's opinion generally not persuasive. That is what the regulations require.

Smith also claims the ALJ improperly rejected Scott's "opinion contending that her assessment was not consistent with the record showing various benign mental status examination findings[,]" but that "contention gives an inaccurate, overall impression regarding Plaintiff's mental functioning and related impairments." [DE 8-1 at Page ID# 754]. The Commissioner counters that Smith is essentially asking the Court to conduct a reevaluation of this factor, which is inappropriate on substantial evidence review. The reality is somewhere in the middle, but under the extremely deferential review standard, the Court must deny Smith's claim. The ALJ gave specific examples of evidence that was not consistent with Scott's opinion and assessed limitations, citing three specific treatment notes. [Tr. at 35, citing Tr. at 624, 644, and 661]. However, this is where it gets sticky: Smith argues that the ALJ mischaracterized the treatment notes by omitting certain information and only referring to a small number of the voluminous notes available. The ALJ did not mischaracterize the treatment notes as in the *Winn* case cited by Smith. *See Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 324, 2015 WL 3702032, at *8 (6th Cir. Jun. 15, 2015). Nonetheless, the ALJ did not cite to the full treatment notes for those representative dates, which, in addition to noting the ALJ's cited characteristics such as "fair to good attitude" and "appropriate behavior" also noted anxious mood and

moderate to significant emotional pain, among other symptoms the ALJ did not mention. [Tr. at 624, 644, and 661]. The Court finds that this was not a mischaracterization, but simply the ALJ pointing out her reasons for finding inconsistencies in the record. While the other treatment notes reflecting Smith's mood or other symptoms may have been consistent with parts of Scott's report, the ALJ was free to find that there was treatment that was inconsistent as well and discount the persuasiveness of Scott's opinion accordingly. For the Court to find otherwise would require the Court to impermissibly reweigh the evidence. "These are classic examples of invitations to reweigh the evidence and to find other medical opinions more persuasive." *Nasser v. Comm'r of Soc. Sec.*, 2022 WL 17348838, at *2 (6th Cir. Dec. 1, 2022). The ALJ looked for consistency in the record, found inconsistency as to Smith's assessment, explained where those inconsistencies were and why she determined Smith's opinion was not generally persuasive. Nothing more is required.

**B. THE ALJ PROPERLY CONSIDERED ALJ BOWLING'S PRIOR DISABILITY DECISION**

Smith argues that the ALJ improperly applied the decision in *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) and the conforming Acquiescence Ruling 98-4(6) to his case. Judge Wier described *Drummond*, and its modifying case, *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018):

> *Drummond* and the corresponding Acquiescence Ruling 98-4(6) required an ALJ to adopt the prior ALJ's RFC finding in a subsequent disability claim, even one that covered a previously unadjudicated period of time, unless there was new and material evidence or a change in the law. *See Drummond*, 126 F.3d at 842; SSAR 98-4(6), 1998 WL 283902 (Jun. 1, 1998). The Sixth Circuit modified this rule in *Earley*, holding that

> "[w]hen an individual seeks disability benefits for a distinct period of time, each application is entitled to review," and while "the first [ALJ's] findings are a legitimate ... consideration in reviewing a second application," they are not binding. *Earley*, 893 F.3d at 933. Under *Earley*, an ALJ should therefore engage in a "fresh review" of a disability claim covering an unadjudicated period of time. *Id*. at 934. Put another way, "ALJs must give a 'fresh look' at new applications covering new periods." *Goins v. Saul*, CIVIL ACTION NO. 19-117-DLB, 2020 WL 1290784, at *5 (E.D. Ky. Mar. 18, 2020) (citation and quotation marks omitted). However, *Drummond* is still good law in situations where a plaintiff seeks review of "the same period of time finally rejected by the first application and offers no cognizable explanation for revisiting the first decision." *Earley*, 893 F.3d at 933.

*LaFollette v. Kijakazi*, 2023 WL 7167177, at *8 (E.D. Ky. Sept. 18, 2023). In *LaFollette*, as in this case, the claimant's subsequent application (the one that was the subject of the appeal to the district court quoted above) covered the time period of a previous application (here, only two days) and nearly two more years after the end of the time period covered by that first application. Thus, "[w]hile the claims have the same start date, LaFollette's disability claims spanned partly distinct time periods. Therefore *Earley* governed the ALJ's analysis of LaFollette's claims, not *Drummond*." *LaFollette*, 2023 WL 7167177, at *9. Similarly, Smith's current claim overlaps with his prior claim by two days but is partly—almost entirely—a distinct time period.

In *LaFollette*, the ALJ did not address *Earley* at all, an omission that court called "alarming," but ultimately reversed and remanded due to "a more fundamental flaw" of imposing additional limitations to the RFC (to LaFollette's benefit) due to new medical evidence but omitting some of the prior ALJ's RFC findings to LaFollette's determent without any explanation. *Id*.

Smith argues it was legal error for the ALJ to cite—and adhere to—*Drummond*, and that the error was harmful (thus, reversible). Smith claims ALJ Kleber improperly relied upon the opinion of nonexamining psychological consultant, Larry Freudenberger, Psy.D., whose opinion was, in turn inappropriately based "almost exclusively on the findings from a prior proceeding dated, June 24, 2021 without engaging [in] an appropriate analysis of the evidentiary record." [DE 14 at Page ID# 783–84]. The Court understands this argument as follows: Smith claims Dr. Freudenberger should not have relied on ALJ Bowling's decision and ALJ Kleber should not have relied on ALJ Bowling's decision directly or indirectly through Dr. Freudenberger's opinion which relied on ALJ Bowling's decision because ALJ Bowling's decision "was based on an improper materiality analysis that rejected Plaintiff's limitations 'apart from episodes of intoxication.'" [DE 14 at Page ID# 784]. Thus, because the ALJ both claimed to be "bound by" ALJ Bowling's prior decision in conformity with *Drummond* and relied on Dr. Freudenberger's opinion which relied on ALJ Bowling's decision, she committed reversable error according to Smith.

The Commissioner, on the other hand, contends that Smith's claim is, in part, a "form over function" argument in that the citation to *Drummond* instead of *Earley*. [DE 10 at Page ID# 774]. The Commissioner argues it was appropriate for ALJ Kleber not to cite to or mention *Earley* in her decision on Smith's claim because "Defendant notes that ALJs are instructed not to cite to case law unless the case in question is the subject of an Acquiescence Ruling, here AR 98-4(6) is applicable. . . . As of the time of the decision, *Earley* was not the subject of an Acquiescence Ruling

but *Drummond* was, so it is normal that the ALJ cited *Drummond* but not *Earley*." [Comm'r Brief, DE 10 at Page ID# 774]. In further support of this counterargument, the Commissioner points to *Mark D. v. Comm'r of the Soc. Sec. Admin.*, in which the District Court for the Southern District of Ohio adopted the magistrate judge's Report and Recommendation affirming the ALJ's non-disability, where the ALJ cited *Drummond* but not *Earley*. *Mark D. v. Comm'r of Soc. Sec.*, No. 3:22-CV-58, 2023 WL 312795, at *5 (S.D. Ohio Jan. 19, 2023), report and recommendation adopted sub nom. *Mark D. v. Comm'r of the Soc. Sec. Admin.*, No. 3:22-CV-58, 2023 WL 2479792 (S.D. Ohio Mar. 10, 2023). The *Mark D.* Court stressed that "while citation to *Drummond* without *Earley* raises a yellow flag, the ultimate question here is whether the ALJ gave a fresh review to the evidence." *Id.*

The ALJ gave a fresh look at the evidence, specifically the evidence gathered after ALJ Bowling's decision, and determined Smith's condition had not changed, and therefore there was no justification for deviating from ALJ Bowling's decision. The ALJ specifically stated:

> The undersigned recognizes that the record contains new and additional evidence. For example, in November of 2021, Mr. Smith underwent a psychological consultative examination, where he reported poor sleep, nightmares, stress, worry, social avoidance, and irritability (Ex. C3F/2). However, as discussed fully below, the new and additional evidence does not provide a basis for a different finding of Mr. Smith's functional limitations.

[Tr. at 36]. The ALJ documented her review of mental health medical records from June through October 2021. [Tr. at 33]. The ALJ reviewed and considered the opinion of consultative examiner Scott from November 2021, though ultimately giving reasons for discounting the opinion. She similarly reviewed and found to be

fully persuasive the report of consulting examiner Katherine Endicott, APRN, which was conducted on January 24, 2022. She found Smith's subjective complaints as reported to Scott, as well as his reported activities of daily living (including driving, shopping, and household chores) were inconsistent with the medical evidence. *See* 20 C.F.R. § 404.1529(c)(3) ("Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities[.]") [Tr. at 34]. From there, the ALJ concluded, as quoted above, that the "new and additional evidence did not provide a basis for a different finding from the prior RFC." [Tr. at 36].

As to Smith's contention that the ALJ erroneously relied on Dr. Freudenberger's opinion because Dr. Freudenberger erroneously relied on ALJ Bowling's decision, the Court cannot engage in two (possibly three) levels of review that are suggested by Smith. Rather, the Court is restricted to reviewing whether the ALJ's decision was supported by substantial evidence. In so doing, the Court is limited to the factors in 20 C.F.R. § 404.1520c, specifically, the supportability and consistency factors that Smith appears to be challenging here. In addressing the supportability and consistency factors, the ALJ found that

> Dr. Freudenberger and Dr. Vandivier supported their opinions with an explanation of the evidence used to formulate them. Further, their assessments are generally consistent with the evidence of record. For example, a consultative examiner reported that Mr. Smith had limited coping skills, appeared anxious, and was socially isolative but was also cooperative, with logical and goal-directed thought processes, intact memory, and adequate attention to task and concentration (Ex. C3F/3-4). As this evidence is consistent with the above limitations, I find the above opinions generally persuasive.

[Tr. at 35]. The ALJ gave specific reasons for relying on Dr. Freudenberger's opinion and finding it consistent with the record; that is all that the regulations required.

Smith, however, appears to ask the Court to both assess how Dr. Freudenberger reached his conclusions and opinion, that is an impermissible overreach for the Court. *See Bowens v. Barnhart*, 101 F. App'x 93, 94 (6th Cir. 2004) ("Federal courts only have jurisdiction to review final decisions of the Commissioner made after a hearing."). Smith further appears to ask the Court to review, directly or indirectly, the decision of ALJ Bowling by arguing that it could not be relied upon by ALJ Kleber or Dr. Freudenberger because ALJ Bowling "failed to conduct a proper materiality analysis." [DE 8-1 at Page ID# 760]. If Smith wanted to challenge the legal analysis in that decision, he could have chosen to appeal it all the way to the district court. The Court is unaware of any evidence that he chose that path; regardless, challenging ALJ Bowling's materiality analysis in this case, even indirectly by challenging it through ALJ Kleber's reliance on his decision, is outside the scope of this Court's review. *Blackburn v. Comm'r of Soc. Sec.*, 748 F. App'x 45, 49 (6th Cir. 2018) ("But Blackburn had sixty days to appeal that decision, 42 U.S.C. § 405(g)–(h), and she did not. Claim preclusion prevents her from relitigating that same period today.") (citing *Earley*).

Thus, the Court finds that ALJ Kleber did not err by citing to *Drummond* as she also applied the principles of *Earley* and provided a fresh look at the evidence before her. She did not err in her consideration and application of Dr. Freundenberger's opinion. Finding no change in Smith's medical condition, the ALJ adopted ALJ Bowling's prior findings. Her decision was supported by substantial evidence.

## III. CONCLUSION

For all the reasons discussed herein, the Court finds that the ALJ's decision was supported by substantial evidence. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision.").

Thus, **IT IS ORDERED** that the Commissioner's motion for summary judgment [DE 10] is **GRANTED** and Smith's competing motion for summary judgment [DE 8] is **DENIED**. A corresponding Judgment will follow.

Entered this 25th day of March, 2024.